Name  Alfredo Walsh

Address  5561 Cathers Crrek Dr.

City, State, Zip  Hiram, GA 30141

Phone  (770) 485-6412

Fax

E-Mail

☐ FPD   ☐ Appointed   ☐ CJA   ☒ Pro Per   ☐ Retained

**FILED**

OCT 1 1 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

Judy Ko, et. al.

PLAINTIFF(S),

v.

Natura Pet Products, Inc. et. al.

DEFENDANT(S).

CASE NUMBER:

C 09-02619 SBA

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _____ Alfredo Walsh _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
  Approving Settlement and Att Fees

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on _____ 9/10/12 _____. Entered on the docket in this action on 9/10/12 _____.

A copy of said judgment or order is attached hereto.

October 8, 2012
Date

Signature
☒ Appellant/ProSe   ☐ Counsel for Appellant   ☐ Deputy Clerk

Note:   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the
        attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number
        of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

1

2

3                    UNITED STATES DISTRICT COURT

4              FOR THE NORTHERN DISTRICT OF CALIFORNIA

5                          OAKLAND DIVISION

6

7
| | |
JUDY KO, individually and on behalf of all | Case No: C 09-02619 SBA
8  other persons similarly situated and on behalf
of the general public, | **ORDER**
9
              Plaintiff, | Docket 88.
10
     vs.
11
NATURA PET PRODUCTS, INC., et al.,
12
              Defendants.
13

14          The parties are presently before the Court on Plaintiff Judy Ko's ("Plaintiff) motion

15   for final approval of class action settlement and motion for attorneys' fees, costs, and an

16   incentive award to the Plaintiff.  See Dkt. 88.  Defendants Natura Pet Products, Inc.

17   ("Natura") and Peter Atkins ("Atkins") filed a joinder to the motion for final approval of

18   class action settlement, Dkt. 89, but did not file an opposition or statement of non-

19   opposition to the motion for attorneys' fees, costs, and an incentive award to the Plaintiff as

20   required by Civil Local Rule 7-3.  Defendant Natura Manufacturing, Inc. did not file an

21   opposition or statement of non-opposition to either motion as required by Civil Local Rule

22   7-3.  Having read and considered the papers filed in connection with these matters, and

23   having considered the arguments made by counsel at the March 6, 2012 hearing, and being

24   fully informed, the Court hereby GRANTS Plaintiff's motion for final approval of class

25   action settlement, and GRANTS IN PART AND DENIES IN PART Plaintiff's motion for

26   attorneys' fees, costs, and incentive award to the Plaintiff, for the reasons stated below.

27   ///

28   ///

## I.   BACKGROUND

On March 20, 2009, Plaintiff filed the instant action on behalf of herself and all other persons similarly situated against Natura, Natura Manufacturing, Inc., and Atkins (collectively, "Defendants").  See Compl., Dkt. 1.  In this action, Plaintiff seeks to represent a class composed of "all persons residing in the United States who purchased any Natura brand dog and cat food products for personal, family, or household purposes" in the period commencing four years before the filing of the complaint to the date of trial.  Compl. ¶ 12.

The complaint alleges one claim for relief against Defendants for Unlawful, Fraudulent and Unfair Business Acts and Practices in violation of California Business and Professions Code § 17200 et seq.  Compl. ¶¶ 25-33.  Specifically, Plaintiff alleges that Defendants' website and labeling contain a large number of misleading and false statements relating primarily to assertions concerning human grade quality of their pet food, including, but not limited to, claims that: (1) "We only use ingredients you'd eat yourself . . ."; (2) "All of our human grade dog and cat foods are carefully cooked and tested . . ."; (3) "Because we use only the highest quality human-grade pet food ingredients in our dog and cat food . . ."; (4) "Use only ingredients which [you] feel comfortable eating yourself"; and (5) "Natura's products use only human grade ingredients."  Id. ¶¶ 1, 22.  The complaint alleges that Defendants made these claims despite their knowledge that there was no support for them.  Id. ¶ 1.

By this action, Plaintiff seeks an Order awarding Plaintiff and the class full restitution of all monies wrongfully acquired by Defendants by means of such unlawful, fraudulent and unfair conduct, plus interest and attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.  See Compl. at Prayer.  Plaintiff also seeks an Order requiring Defendants to desist from promoting Natura brand dog and cat food products as containing ingredients that are "human grade" or of "human quality."  Id.

Beginning in approximately January 2010, the parties engaged in a series of discussions and meetings regarding settlement of the instant action.  Pl.'s Mtn. for Final Approval at 4, Dkt. 88-1.  The parties engaged in arms-length negotiations and attended a

full day mediation session before the Hon. Jack Komar (Ret.). Id. Prior and subsequent to the mediation session, Defendants exchanged information and documentation regarding the class and the claim alleged in the complaint with Plaintiff's counsel. Id. With the assistance of the mediator, the parties reached an agreement in principle and executed a memorandum of understanding. Id. After further negotiations, the parties executed a final Settlement Agreement and Release ("Settlement Agreement") on June 24, 2011. Id. at 4-5. On that same day, the parties filed a joint motion for preliminary approval of class action settlement. Dkt. 73.

On July 13, 2011, Judge Fogel issued an Order preliminarily approving the class action settlement. Dkt. 76. On July 19, 2011, Judge Fogel issued an amended Order preliminarily approving the class action settlement. Dkt. 78. In the amended Order, Judge Fogel certified a settlement class defined as: "All persons residing in the United States who purchased any Natura Product for personal, family, or household purposes (the 'Class') during the time period from March 20, 2005 to July 8, 2011 (the 'Class Period')." Id. The Order also appointed Plaintiff as the Class Representative and the law firms of Keegan & Baker, LLP and Foreman Friedman, PA, to serve as Class Counsel. Id.

Under the terms of the Settlement Agreement, the class will receive a gross settlement payment of $2,150,000 from Defendants in exchange for a release of all claims related to this lawsuit. Settlement Agreement at 13, 32-33. In addition, the Settlement Agreement calls for injunctive relief, which prohibits Natura from marketing, promoting, advertising, and/or otherwise disseminating promotional information relating to any Natura product with any statement that its ingredients and/or its pet food products are of "human grade," "human quality," and/or are something that "you would eat yourself." Id. at 13.

The Defendants have also agreed to pay for all of the Settlement Administrator's fees and costs, including the cost of providing notice to the class exceeding $400,000. Settlement Agreement at 13-14, 17-18. Finally, the parties have agreed, subject to Court approval, that Defendants will not oppose a request for payment of an incentive award to Plaintiff in an amount that does not exceed $20,000, and that Class Counsel shall be

1  entitled to request an award of attorneys' fees, costs, and expenses in an amount of up to

2  35% of the gross settlement fund after actual case costs are deducted. Id. at 16-17.

3      On September 28, 2011, this action was reassigned to the undersigned. Dkt. 81. On

4  January 20, 2012, Plaintiff filed a motion for final approval of class action settlement and a

5  motion for attorneys' fees, costs, and an incentive award to the Plaintiff. See Dkt. 88.

6  Defendants Natura and Atkins filed a joinder to the motion for final approval of class action

7  settlement on January 20, 2012, Dkt. 89, but did not file an opposition or statement of non-

8  opposition to the motion for attorneys' fees, costs, and an incentive award to the Plaintiff as

9  required by Civil Local Rule 7-3. Defendant Natura Manufacturing, Inc. did not file an

10  opposition or statement of non-opposition to either motion as required by Civil Local Rule

11  7-3. A final approval fairness hearing was held on March 6, 2012. Dkt. 95.

12  **II.   DISCUSSION**

13          **A.   Final Approval of Class Action Settlement**

14                  **1.   Legal Standard**

15      In order to grant final approval of the parties' proposed Settlement Agreement, the

16  Court must determine whether the agreement meets the class action settlement

17  requirements of Rule 23(e) of the Federal Rules of Civil Procedure.

18      Rule 23(e) provides that: "The claims, issues, or defenses of a certified class may be

19  settled, voluntarily dismissed, or compromised only with the court's approval."

20  Fed.R.Civ.P. 23(e). Approval under this rule entails a two-step process: (1) preliminary

21  approval of the settlement; and (2) final approval of the settlement at a fairness hearing

22  following notice to the class. See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 221

23  F.R.D. 523, 525 (C.D. Cal. 2004); Manual for Complex Litig. (Fourth) §§ 21.632-21.634,

24  at 321-22 (2004). The Court may finally approve a class action settlement "only after a

25  hearing and on finding that it is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); In

26  re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

27      The primary concern of Rule 23(e) is "the protection of those class members,

28  including the named plaintiffs, whose rights may not have been given due regard by the

negotiating parties." <u>Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco</u>, 688 F.2d 615, 624 (9th Cir. 1982). The district court's discretion in considering final approval of a settlement is informed by balancing the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

<u>Churchill Vill. LLC v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004) (citing <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998)). "This list is not exhaustive, and different factors may predominate in different factual contexts." <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1376 (9th Cir. 1993). In addition to these factors, the Court may consider the procedure by which the parties arrived at the settlement. <u>See</u> <u>Chun–Hoon v. McKee Foods Corp.</u>, 716 F.Supp.2d 848, 851 (N.D. Cal. 2010).

The district court's role in evaluating a proposed settlement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement is fair as a whole. <u>See</u> <u>Rodriguez v. West Publ'g Corp.</u>, 563 F.3d 948, 965 (9th Cir. 2009). It is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms. <u>Officers for Justice</u>, 688 F.2d at 625. "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." <u>Evans v. Jeff D.</u>, 475 U.S. 717, 726 (1986); <u>see also</u> <u>Hanlon,</u> 150 F.3d at 1026 ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.") (internal quotations marks omitted).

///

///

///

## 2. Balancing of Factors

### a. Strength of Plaintiff's Case

The first factor is the strength of Plaintiff's case. In this regard, Plaintiff argues that she and Class Counsel believe that the claim asserted in this litigation has merit and that the evidence developed to date supports the claim asserted. However, because the Court did not have the opportunity to consider the merits of Plaintiff's claim, given the settlement of this matter before any substantive motions were filed, this factor is neutral.

### b. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The next factor is the risk, expense and duration associated with prosecuting this case through trial and the appellate process. These considerations favor approval of the settlement because there is substantial risk in litigating this case further. Plaintiff acknowledges that there is uncertainty in prevailing on her claim due to the defenses that have been or could be asserted by Defendants in the event the lawsuit went forward. Moreover, as pointed out by Plaintiff, the Ninth Circuit recently decertified a nationwide class action brought under California's Unfair Competition Law on the ground that California law could not be applied to the entire nationwide class under the Court's three-step governmental interest test. Mazza v. American Honda Motor Co., Inc., 666 F.3d 58, 594 (9th Cir. 2012) (holding that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place). In addition, as Plaintiff notes, choice-of-law issues may render a potential class unmanageable such that no recovery would be possible without settlement. Finally, further litigation would undoubtedly be time-consuming and expensive for both sides. Accordingly, the Court finds that this factor weighs in favor of approving the settlement. See Rodriguez, 563 F.3d at 964 (difficulties and risks in litigating further weighed in favor of approving settlement).

### c.     Risk of Maintaining Class Action Status

The third factor is the risk of maintaining class certification in the event the litigation was to proceed. Judge Fogel conditionally certified a nationwide class of individuals who purchased any Natura product for personal, family, or household purposes during the class period. The complaint asserts one claim for relief under California's Unfair Competition Law. Given the difficulties and risks in obtaining and maintaining class certification discussed above, the Court finds that this factor weighs in favor of approving the settlement.

### d.     Amount Offered in Settlement

The amount of the settlement is another factor for the Court to consider in determining whether to finally approve a proposed class action settlement. Churchill Vill., 361 F.3d at 574. Here, Defendants have agreed to pay $2,150,000 to the class. Settlement Agreement at 13. Under the terms of the Settlement Agreement, class members are eligible for a cash payout of approximately $35 in the event the Court grants Plaintiff's motion for attorneys' fees, costs, and incentive award to the Plaintiff.[1] Defendants have also agreed to pay the costs for class notice and claims administration, including costs in excess of the $400,000 the parties agreed would be paid from the settlement fund for class notice and claims administration.[2] Id. at 13-14. In addition, the settlement calls for injunctive relief, which prohibits Defendants from marketing, promoting, advertising, and/or otherwise disseminating promotional information relating to any of its products with any statement that its ingredients and/or its pet food products are of "human grade," "human quality,"

---

[1] According to the Claims Administrator, 26,434 people submitted valid claims. Bethke Decl. ¶ 7, Dkt. 91-1. Thus, if the Court deducts $400,000 in notice and claims administration costs from the common fund and grants Class Counsel's motion for attorneys' fees, costs, and an incentive award to Plaintiff, a total of $1,217,284.85 will be deducted from the common fund of $2,150,000. As such, the amount available for distribution will be $932,715.15. Under these circumstances, Class Members will be eligible for a settlement check in the amount of $35.28.

[2] The total cost for class notice and claims administration is $860,000. Bethke Decl., ¶ 18, Dkt. 88-7. Thus, Defendants have paid $460,000 in notice and claims administrative costs in addition to the $400,000 that will be deducted from the settlement fund for notice and claims administration costs.

and/or are something that "you would eat yourself." Id. at 13. According to Plaintiff, the injunctive relief will achieve the primary objective of the lawsuit. In short, because the Settlement Agreement provides discernible benefits to class members, the Court finds that this factor weighs in favor of approving the settlement.

> ### e.   Extent of Discovery Completed and the Stage of the Proceedings

The settlement in this action was reached after two years of litigation during which the parties engaged in some discovery and motion practice. According to Plaintiff, Class Counsel completed extensive pre-trial discovery before attending the mediation session with Defendants and reviewed thousands of pages of data and documents before entering into settlement negotiations. Pl.'s Mtn. at 13. In addition, Plaintiff asserts that Class Counsel have interviewed hundreds of class members, conducted numerous interviews of Plaintiff, and hired and consulted with a qualified expert. Id. The fact that the settlement was reached at this juncture tends to support the conclusion that the parties' decision to settle was an informed one, and therefore the Court finds that this factor weighs in favor of approving the settlement.

> ### f.   Experience and Views of Counsel

The experience and views of counsel representing the parties support approval of the settlement. See Hanlon, 150 F.3d at 1026 (noting that the experience of counsel representing plaintiff and defense also favors final approval of the proposed settlement). The attorneys representing both sides are experienced in this type of litigation and are in a position to opine whether the settlement is fair, reasonable and adequate. Given the collective experience of the attorneys involved in this litigation, the Court credit counsels' view that the settlement confers actual benefits to the class and is worthy of approval.

> ### g.   The Presence of a Governmental Participant

Notice of the settlement was sent to the Attorney General's office of each of the fifty states. None has objected to the settlement.

### h.      Reaction of the Class Members

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining whether final approval is appropriate. Mandujano v. Basic Vegetable Prods. Inc., 541 F.2d 832, 837 (9th Cir. 1976). Out of the approximately 242,575 members who were mailed or e-mailed notice of the settlement, only 3 individuals have submitted objections and only 25 have chosen to opt-out. Bethke Decl. ¶¶ 7, 16-17. Of the objections submitted, only those submitted by Alfredo Walsh state any ostensible objection to the settlement.

Given the relatively small number of objections and opt-outs, the Court finds that the reaction of the class to the settlement is positive, which favors approving the settlement. See Rodriguez, 563 F.3d at 967 ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections.").

### i.      Arm's Length Transaction

Finally, the Court considers whether the settlement was likely the result of good faith negotiations at arm's length, or whether it was the product of fraud or collusion. See Officers for Justice, 688 F.2d at 625. Here, because the Settlement Agreement was entered into after arms-length negotiations and a mediation session overseen by the Hon. Jack Komar (Ret.), the Court finds that this factor weighs in favor of approving the settlement.

### j.      Conclusion

On balance, the Court concludes that the relevant factors weigh in favor of a finding that the settlement is fair, reasonable and adequate.

### B.      Objections to the Settlement

In determining whether to finally approve a class action settlement, the Court considers whether there are any objections to the proposed settlement and, if so, the nature of those objections. The fact that there is some opposition does not necessitate disapproval of the settlement; rather, the Court must evaluate the substance of the objections to

determine whether they suggest serious reasons why the proposal might be unfair.  Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984); White v. Experian Information Solutions, Inc., 803 F.Supp.2d 1086, 1100 (C.D. Cal. 2011).

As set forth below, none of the objections submitted to the Court establish a basis to deny final approval of the settlement, especially given that the settlement was achieved as a result of arms-length settlement negotiations and a mediation session overseen by the Hon. Jack Komar (Ret.).  The Court finds that the objections submitted do not present any compelling reason for rejecting the settlement.

### 1.     Eve Walker

Eve Walker, aka "Rachel Malanud" ("Walker"), objects to the settlement on the ground that the lawsuit "seems frivolous" because she does not "see that there was a harm or damage to any animal" and "[e]ven though humans may not eat fish meal, they might." Bethke Decl., Exh. D.  The Court rejects this objection for two reasons.  First, Walker did not submit a timely claim form, and therefore the Court need not consider her "objection" because she lacks standing.  See Californians for Disability Rights v. Cal. Dept. of Transp., 2010 WL 2228531, at *8 (N.D. Cal. 2010) (Armstrong, J.) (a court need not consider the objections of non-class members because they lack standing).  Second, an objection based on a concern for the Defendants and an apparent non-substantive assessment of the frivolity of the action are not germane to the issue of whether the settlement is fair.  Walker's apparent concern for the Defendants is inapposite, since the purpose of Rule 23(e)'s final approval process is the protection of absent class members, and not the Defendants. Officers for Justice, 688 F.2d at 624.  Thus, Walker's objection is OVERRULED.

### 2.     Larry Stites

Although Larry Stites' ("Stites") objection is largely unintelligible, he appears to object to the settlement on the ground that he personally believes that the lawsuit is "unbelievably nick-picking and severe[ly] unfair" to Natura.  As previously indicated, any concern for Natura and the subjective view of the frivolity of the action are not germane to the issue of whether the settlement is fair.  Officers for Justice, 688 F.2d at 624.

1   Accordingly, because Stites states no substantive ground for objecting to the settlement, his

2   objection is OVERRULED.

3           **3.    Alfredo Walsh**

4           Alfredo Walsh ("Walsh") objects to the settlement on the following grounds: (1) all

5   of the deductions to the common fund (e.g., attorneys' fees, costs, incentive award, and

6   administrative expenses) reduce the common fund by more than half; (2) the Class Notice

7   is deficient because it provides inadequate information concerning how much a class

8   member will actually receive; and (3) the attorneys' fees, incentive award, and

9   administrative expenses are excessive.

10          As for Walsh's objection to the Class Notice, this objection is OVERRULED

11  because it does not suggest that the settlement might be unfair.  The actual amount class

12  members may recover in this case is based on the size of the class.  This, of course, cannot

13  be determined at the time notice is sent out.  Therefore, this objection does not present a

14  compelling reason for rejecting the settlement.

15          As for Walsh's objection to the deductions to the common fund, this objection is

16  OVERRULED to the extent that it objects to the amount requested for attorneys' fees,

17  costs, and incentive award to Plaintiff because the settlement is not contingent upon the

18  Court awarding the full amounts requested.  The Settlement Agreement specifically states

19  that the actual amount awarded is subject to Court approval.

20          Finally, as for Walsh's objection to the $400,000 in administrative expenses

21  deducted from the common fund, this objection is OVERRULED because it does not

22  present a compelling reason for rejecting the settlement.  Class Counsel explained in their

23  motion papers and at the final approval hearing that the notice and administrative costs

24  ($860,000 total)[3] were so high because nearly all of the sales of the products were made to

25  consumers by non-party retailers, and thus there was no readily available list of all Natura

26

27          [3] The total cost for class notice and for claims administration is $860,000.  Bethke
    Decl., ¶ 18.  Of this amount, $800,000 was spent on notice and $60,000 was spent on
28  administering claims.  Id.

1   pet food product purchasers.  As a consequence, the class notice plan approved by Judge

2   Fogel resulted in the expense of $800,000 in notice costs, most of which, $695,000, was

3   spent on a media campaign.  Bethke Decl., ¶ 18, n. 1.  The parties agreed that $400,000 in

4   notice and claims administration costs would be deducted from the common fund, while

5   any notice and claims administration costs in excess of this amount would be paid by

6   Defendants.  Having considered the compelling arguments of Class Counsel with respect to

7   this objection, the Court finds that Walsh's objection regarding the administrative expenses

8   deducted from the common fund is an insufficient basis to reject the settlement.  Class

9   Counsel provided an adequate justification for these expenses.

10              **4.    "Motion" by Michael Gresham**

11          On January 3, 2012, Michael Gresham ("Gresham") filed a document entitled

12   "Motion to Receive Copy of Settlement Objection."  Dkt. 85.  In his motion, Gresham

13   contends that he is a class member and that he moves to object to the settlement and to

14   receive a copy of the Settlement Agreement.  Dkt. 85.  The envelop used by Gresham to

15   mail his motion to the Court indicates that he is currently incarcerated in Marquette Branch

16   Prison in Marquette, Michigan.  Id.

17          Prior to the filing of his motion, the Settlement Administrator received a letter from

18   Gresham requesting claims packages for the settlement, which indicates that Gresham is

19   incarcerated.  Bethke Decl. ¶ 6, Exh. A, Dkt. 86-2.  The Settlement Administrator denied

20   Gresham's request on the ground that he was incarcerated during the Class Period, and

21   therefore could not have purchased any Natura products.  Id., Exh. B.  Thus, because

22   Gresham is not a member of the class, he lacks standing to object to the Settlement.  See

23   Californians for Disability Rights, 2010 WL 2228531, at *8.  Accordingly, Gresham's

24   motion is DENIED.

25      **C.    Motion for Attorneys' Fees, Costs and Incentive Award to Plaintiff**

26              **1.    Attorneys' Fees**

27          Class Counsel request a fee award in the amount of $752,500.  Pl.'s Mtn. for

28   Attorneys' Fees, Dkt. 88-3.  When viewed as a percentage of the fund basis, the requested

1  fee award amounts to 35% of the fund, which exceeds the 25% benchmark the Ninth

2  Circuit considers presumptively reasonable.  According to Class Counsel, the "true"

3  monetary value of the settlement benefit achieved for the class is $2,610,000.  In support of

4  this contention, Class Counsel assert that the $460,000 in "Extra Notice & Administration

5  Costs" that Defendants agreed to pay in addition to the Settlement Fund of $2,150,000 is a

6  benefit achieved for the class, citing Staton, 327 F.3d at 975 (concluding that where the

7  defendant pays the justifiable cost of notice to the class it is reasonable (although certainly

8  not required) to include that cost in a putative common fund benefiting the plaintiffs for all

9  purposes, including the calculation of attorneys' fees).  Thus, Class Counsel contend that

10  the award of attorneys' fees sought is only approximately 28% of the true monetary value of

11  the settlement, calculated as $2,610,000 divided by $752,500.

12  Where, as here, the settlement of a class action creates a common fund, the Court

13  has discretion to award attorneys' fees using either the lodestar method or the percentage of

14  the fund approach.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

15  Under the lodestar method, the lodestar amount is calculated by multiplying the number of

16  hours reasonably expended by counsel by a reasonable hourly rate.  Hanlon, 150 F.3d at

17  1029.  Under the percentage-of-the-recovery method, the attorneys' fees are calculated as a

18  percentage of the common fund, with 25% established as the "benchmark" in the Ninth

19  Circuit.  See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 942.  A departure from

20  that benchmark requires a showing of "special circumstances."  Id.  When applying the

21  percentage approach, courts look to the lodestar as a "cross-check" to determine the

22  reasonableness of the fee request.  See Vizcaino, 290 F.3d at 1050.  Regardless of whether

23  the court uses the percentage approach or the lodestar method, the main inquiry is whether

24  the end result is reasonable.  Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000).

25  As noted, the lodestar is the product of reasonable hours times a reasonable rate.

26  City of Burlington v. Dague, 505 U.S. 557, 559 (1992) (citations omitted).  "In determining

27  reasonable hours, counsel bears the burden of submitting detailed time records justifying

28  the hours claimed to have been expended."  Chalmers v. City of Los Angeles, 796 F.2d

- 13 -

1205, 1210 (9th Cir. 1986).  "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." Id.

Reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant community," with a special emphasis on fees charged by lawyers of "comparable skill, experience, and reputation." Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992) vacated in part on other grounds by 984 F.2d 345 (9th Cir. 1993).  As a general rule, the forum district represents the relevant legal community. See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895, n. 11 (1984).  "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." United Steelworkers of America v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

Class Counsel contend that a fee award in excess of the 25% benchmark is appropriate for numerous reasons, which the Court summarizes as follows:  (1) the settlement is a "superior result," especially given that, in addition to injunctive relief, the settlement will provide a direct monetary benefit to class members of approximately $35; (2) "this case raised a panoply of difficult and unsettled issues of law"; (3) the "successful prosecution of the[] complex claims [alleged in this action][4] required the work of highly skilled and specialized attorneys.  The quality of Class Counsel's work on this case was exemplary and a major factor in achieving the result obtained"; (4) "[t]his settlement was achieved only after complex factual and legal questions at issue were mediated after having been the subject of many hours of research and analysis by Class Counsel"; (5) "Class

---

[4] While Plaintiffs' motion repeatedly refers to the "claims" alleged in this action, there is only one claim for relief alleged in the complaint.

1   Counsel received no compensation during the course of this litigation and incurred

2   significant expenses in litigating for the benefit of the class.  Any fee award or expense

3   reimbursement to Class Counsel has always been at risk and completely contingent on the

4   result achieved and on this Court's exercise of its discretion in making any award"; (6) a

5   fee award of 35% of the common fund "is commensurate with federal court and, in

6   particular, Ninth Circuit-precedent case surveys which reflect that awards of 30% and more

7   are common"; (7) "[i]f this were a non-representative litigation, the customary fee

8   arrangement would be contingent, on a percentage basis, and in the range of 33% to 40% of

9   the recovery"; (8) the fee requested is reasonable because only one individual objected to

10  the amount of attorneys' fees; and (9) the lodestar "confirms the reasonableness of the

11  requested fee."  Pl.'s Mtn. for Attorneys' Fees at 11-19.

12        The Court finds that Class Counsel have failed to demonstrate that "special

13  circumstances" exist to justify a departure from the 25% benchmark.  The results achieved

14  in this litigation were acceptable, considering the risks Plaintiff would have faced at the

15  class certification stage and at trial.  However, in addition to the injunctive relief, each class

16  member will only recover a cash payout of approximately $35, which according to Class

17  Counsel is the equivalent of one bag of Natura pet food.  While Class Counsel assert that

18  this is a "superior result," Class Counsel have failed to show what percentage the settlement

19  constitutes in comparison to the potential recovery.  Therefore, it is difficult to gauge

20  whether the result truly is "superior."

21        Further, while Class Counsel took this case on a contingent basis and it is axiomatic

22  that this involved a risk of being unsuccessful, they have failed to articulate any specific

23  and compelling reason why a departure from the benchmark is appropriate.  Indeed, while

24  the complaint alleges one claim for relief under California's Unfair Competition Law, the

25  motion papers contend that this case was settled "only after complex factual and legal

26  issues were mediated after having been the subject of many hours of research and analysis

27  by Class Counsel."  Pl.'s Mtn. for Attorneys' Fees at 17.  Class Counsel's motion papers,

28  however, do not describe one "complex" factual or legal issue that was mediated during the

1   one-day mediation session, let alone sufficiently explain the "panoply of difficult and

2   unsettled issues of law" they claim are presented by this case. See id. at 14. Nor should

3   counsel expect the Court to be aware of the complex factual and legal issues in this case.

4   There has been no motion practice in this Court regarding the merits of the claim alleged in

5   the complaint. In fact, Class Counsel did not file any motions in this case prior to

6   settlement other than a motion to remand. While a motion to dismiss was filed, it was

7   withdrawn before Plaintiff filed an opposition.

8          At the final approval hearing, the Court asked Class Counsel to explain the

9   complexities of this case but they failed to do so. Following the final fairness hearing,

10  Class Counsel submitted supplemental declarations in an attempt to rectify their failure.

11  See Baker Supp. Decl., Dkt. 97; MacIvor Supp. Decl., Dkt. 96. Having reviewed these

12  declarations, the Court is not convinced that this case involves complex factual or legal

13  issues. However, even assuming the instant case is factually complex as Class Counsel

14  claim, the supplemental declarations fail to identify and explain one complex factual or

15  legal issue that was actually litigated or mediated at the one-day mediation session. Nor do

16  the declarations specifically describe one difficult or "unsettled" legal issue presented by

17  this case, let alone the "panoply of difficult and unsettled issues of law." Instead, MacIvor

18  generally avers that "there were a number of legal issues to be addressed, including whether

19  a cause of action for consumer fraud would be preempted by federal law, constitutional

20  standing of not only the individual class representatives but standing to serve as class

21  representatives and a number of other complex legal issues." MacIvor Supp. Decl. ¶ 20.

22  Baker, for his part, generally avers that the case was "certainly complex" because "[u]nlike

23  single party cases, class actions involve a multitude of party interests and affect interstate

24  commence . . . and are more complex than non-class cases in that class counsel has to

25  consider the commonality of claims and the multiplicity of laws, as well as navigate the

26  procedural and substantive hurdles of class certification, preliminary approval, class notice,

27  class administration and final approval." Baker Supp. Decl. ¶ 17.

28

Given the lack of motion practice, substantive work performed on this case prior to settlement and Class Counsel's failure to show that complex factual or legal issues were litigated or mediated, the Court finds that Class Counsel are hard-pressed to legitimately claim that this is an exceptional case justifying a fee award above the 25% benchmark. Indeed, contrary to Class Counsel's contention, they have not shown that the settlement of this case "required the work of highly skilled and specialized attorneys," that their "work on this case was exemplary," or that they "litigated this action with great efficiency." The quality of work with respect to the motion for final approval of class action settlement and the motion for attorneys' fees, costs and an incentive award to Plaintiff is not consistent with Class Counsel's claim that highly skilled attorneys efficiently litigated this case in an exemplary manner.

Equally misplaced is Class Counsel's claim that the lodestar cross-check "confirms the reasonableness of the requested fee." In their motion for attorneys' fees, Class Counsel provided a lodestar figure of $463,611.50 for the work performed by Keegan & Baker, LLP, but claim that an award of fees in the amount of $752,500 is justified by the application of a multiplier and consideration of "time expended by Foreman Friedman PA in this litigation and the prior litigation against Defendants." Pl.'s Mtn. for Attorneys' Fees at 21.

At the final fairness hearing, the Court informed Class Counsel that it was improper for them to rely on time expended by Foreman Friedman PA in prior litigation against Defendants to justify the fees requested in this case. The Court also informed Class Counsel that their initial submissions intended to permit the Court to conduct a lodestar "cross-check" were woefully inadequate, leaving the Court unable to confirm the appropriateness of the fee award requested. The Court advised Class Counsel that it would consider supplemental submissions justifying the proposed fee award. In response, Class Counsel represented that they would provide the Court with additional information to address the Court's concerns.

On March 13, 2012, Class Counsel submitted three supplemental declarations in support of their request for attorneys' fees. See Dkt. 96-98. To justify the fee award requested, Patrick Keegan ("Keegan"), Jason Baker ("Baker"), and Catherine MacIvor ("MacIvor") each submitted a declaration. See id. In his declaration, Keegan attests that his law firm, Keegan & Baker, LLP, has expended a total of 1,051.02 hours on this case for a lodestar of $483,260.50. Keegan Supp. Decl. ¶ 10, Dkt. 98. In her declaration, MacIvor claims for the first time that her firm, Foreman Friedman PA, has expended 295.6 hours on this case for a lodestar of $85,505. MacIvor Supp. Decl. ¶ 24. Thus, the total lodestar provided by Class Counsel in their supplemental submissions is $568,765.50,[5] which is approximately 26.4% of $2,150,000. Given that the lodestar amount requested by Class Counsel is 26.4% of the common fund, it is unclear how the lodestar shows that the 35% fee requested (i.e., $752,500) is reasonable. If anything, the lodestar confirms that using the benchmark is reasonable and appropriate in this case, particularly since the original lodestar amount provided by Class Counsel, $463,611.50, is approximately 21.5% of $2,150,000.

Moreover, Class Counsel failed to demonstrate that the lodestar is the product of reasonable hours times a reasonable rate. Class Counsel did not submit evidence showing that the hourly rates charged, i.e., $245/hr. to $595/hr., are reasonable and customary in this district for the type of work performed. In support of their motion, Class Counsel cite to surveys conducted in 2007 and 2009 of billing rates of "250 of the nation's largest law firms." Keegan Supp. Decl. ¶ 13. According to Keegan, the requested hourly rates are reasonable because the rates charged by his 3-person firm[6] "are far less than those charged

---

[5] The lodestar figure provided by Class Counsel following the final fairness hearing is significantly higher than the lodestar figure of $463,611.50 initially provided by Class Counsel in their attorneys' fees motion. The bulk of the increase is attributable to MacIvor's averment in her supplemental declaration that her firm incurred fees in the amount of $85,505 in connection with this action. MacIvor, however, did not provide an explanation as to why the fees her firm incurred in litigating this matter were not included in Class Counsel's attorneys' fees motion.

[6] See http://www.keeganbaker.com/Attorneys/

1  within[] the last four years by partners and associates of other California law firms similarly

2  engaged in complex litigation such as in this case." Id.  Keegan's declaration purports to

3  compare the billing rate of his firm to other law firms such as Fenwick & West (Mountain

4  View), Howard Rice Nemerovski Canady Falk & Rabkin (San Francisco), Knobbe Martens

5  (Irvine), and Loeb & Loeb (Los Angeles), among others. Id. ¶ 14.

6         The Court finds that Class Counsel have failed to satisfy their burden of producing

7  satisfactory evidence demonstrating that the requested rates are in line with those prevailing

8  in this district for similar services by lawyers of reasonably comparable skill, experience

9  and reputation.  Class Counsel did not provide a declaration from any attorney in this

10  district demonstrating that the hourly rates charged by Class Counsel and the attorneys that

11  worked on this case are in line with the prevailing market rates in this district for plaintiff-

12  side law firms performing similar work and possessing similar experience as Class

13  Counsel.  Nor did Class Counsel submit a declaration identifying any decision from this

14  district determining the reasonableness of the rates charged by Class Counsel and the other

15  attorneys that worked on this case.

16         To the extent that Class Counsel rely on rates charged by attorneys outside this

17  district to establish the appropriateness of the requested lodestar rates, such reliance is

18  misplaced.  The rates charged by attorneys outside of this district are not germane to the

19  issues in this case. See Gates, 987 F.2d at 1405 (as a general rule, the forum district

20  represents the relevant legal community).  Further, Class Counsel's mere citation to the

21  rates charged by large law firms, without more, does not establish the reasonableness of

22  their hourly rates.  Large law firms, such as the ones identified by Class Counsel in support

23  of the hourly rates charged, typically hire individuals that graduate at the top of their class

24  from top law schools.  They also generally have Fortune 500 companies as their clients and

25  provide defense-side litigation services.  There is no showing that the work performed by

26  the large law firms identified by Class Counsel or the credentials and reputation of their

27  attorneys are in any way comparable to Class Counsel and the attorneys that worked on this

28  case or to small plaintiff-side law firms located in this district and their attorneys.

Furthermore, having reviewed the billing records submitted by Class Counsel in support of the proposed fee award, the Court finds that Class Counsel have failed to sustain their burden of "submitting detailed time records justifying the hours claimed to have been expended." See Chalmers, 796 F.2d at 1210. The records provided by Class Counsel do not substantiate Class Counsel's claim that they reasonably spent a total of 1,346.62 hours litigating this case.

While Class Counsel claim that they "conducted an in-depth and thorough investigation of Defendants' representations" prior to settlement, the Court was unable to locate any billing entries supporting Class Counsel's contention that they "interview[ed] well over 100 factual witnesses," "review[ed] extensive amounts of documents and data obtained from Defendants in discovery, including approximately 12,000 pages of advertisements" and other documents, reviewed "extensive discovery requests and responses to discovery," "interview[ed] . . . hundreds of putative class members," or evaluated "information provided by personnel who worked at processing plants where ingredients for pet food are obtained."

A review of the billing records submitted by Class Counsel does not reveal that Class Counsel or any other attorney that worked on this case billed time for interviewing fact witnesses or putative class members or for evaluating information from personnel who worked at processing plants. Indeed, there are no billing entries specifically stating that a witness or class member was "interviewed" or that information from individuals that worked at "processing plants" was "evaluated" or analyzed. With regard to document review and discovery, the billing entries submitted by Class Counsel reveal that the attorneys that worked on this case billed approximately 60 hours of time for document review and for preparing and reviewing discovery requests. The Court finds that the time billed for document review and discovery is not consistent with Class Counsel's claim that they "review[ed] extensive amounts of documents and data obtained from Defendants in discovery, including approximately 12,000 pages of advertisements" and other documents.

1   As for the number of hours Class Counsel claim to have expended on this case, the

2   Court finds that the billing records submitted lack sufficient factual detail to enable the

3   Court to determine whether the hours billed were justified.  In his supplemental declaration,

4   Keegan attests that he and Baker spent a total of 834.76 hours on this case for a lodestar of

5   $421,264, which amounts to approximately 75% of the total fee award requested.  Keegan

6   Supp. Decl. ¶¶ 9-10.  According to Keegan, he billed 491.95 hours at a rate of $595 for a

7   lodestar of $292,710.25, which amounts to more than half of the fee award requested by

8   Class Counsel.  Id. ¶ 9.  However, the time records submitted by Keegan fall far short of

9   the "detailed time records" required to justify the fees requested because the vast majority

10   of the entries refer only generally to e-mails and telephone conversations without

11   identifying the subject matter of the e-mails or telephone conversations.  Keegan Supp.

12   Decl., Exh. 1.  For instance, the entries uniformly state "review/analyze e-mail from . . ." or

13   "draft/revise e-mail to . . ." or "teleconference with . . ."  Id.  Keegan also submitted billing

14   entries that simply state: "Draft/revise mediation brief," "Meeting with Jason Baker," and

15   "Research for final approval."  Id.

16   Baker's time records, although more detailed than Keegan's, often lack sufficient

17   factual detail as well.  Baker Supp. Decl., Exh. C.  For example, Baker billed time for:

18   "Telephone Conference with Attorney Keegan re motion," "Document review and

19   preparation," "Meeting with co-counsel," "Prepare mediation brief," "Review and respond

20   to correspondence from co-counsel," "Review/analyze issues for conference call," and

21   "Telephone conference with all counsel."  Id.  The lack of factual detail in the billing

22   entries, especially in Keegan's, prevents the Court from performing a meaningful review to

23   determine the amount of time Class Counsel reasonably expended on this case.

24   Based on Class Counsel's showing, the Court concludes that the 25% benchmark is

25   reasonable and appropriate in this case.  Class Counsel did not sustain their burden to

26   demonstrate that an award in excess of the benchmark is warranted.  There has been no

27   showing of "special circumstances" justifying a departure from the benchmark.  See In re

28   Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 942 (a departure from that benchmark

1   requires a showing of "special circumstances"). In fact, given Class Counsels' failure to

2   provide billing records demonstrating that the lodestar is the product of reasonable hours

3   multiplied by reasonable rates, the lack of substantive work performed on this case prior to

4   settlement, the results obtained, and the quality of worked performed by Class Counsel in

5   connection with the motion for final approval of class action settlement and the motion for

6   attorneys' fees, the Court finds that the benchmark is more than adequate to compensate

7   Class Counsel for their performance in this case. See id. at 941-942 (lodestar figure is

8   presumptively reasonable only if it is supported by adequate documentation; noting that

9   lodestar may be adjusted downward for a number of reasons, including the quality of

10  representation and benefit obtained for the class). Even though Class Counsel will receive

11  a lower than requested award, they are still being compensated handsomely for their

12  performance; the $537,500 award results in a $399.14 hourly rate for the 1,346.62 hours

13  Class Counsel claim to have expended on this case.

14              2.      Costs

15          Collectively, Class Counsel seek reimbursement of expenses in the aggregate

16  amount of $44,784.85. Keegan Supp. Decl. ¶ 22. These costs include the cost of experts

17  retained to assist them in analyzing the claims and providing assistance in the settlement

18  process. Id. ¶¶ 20-21. In addition, Class Counsel incurred costs for JAMS mediation,

19  postage, legal research fees, filing fees, photocopying costs, messenger and travel costs,

20  and other administrative expenses. Id., Exh. 1; MacIvor Decl., Exh. B. Having reviewed

21  the evidence submitted in support of Class Counsel's request for costs, the Court finds that

22  the costs and expenses incurred by Class Counsel were reasonably incurred. See In re TD

23  Ameritrade Account Holder Litigation, 2011 WL 4079226, *16 (N.D. Cal. 2011)

24  (Armstrong, J.) (approving $27,807.91 in costs, including costs for filing fees,

25  photocopying costs, messenger and travel costs, and other administrative expenses, based

26  on settlement where defendant agreed to pay a minimum of $2.5 million and up to a

27  maximum of $6.5 million in claims). Accordingly, the Court awards Class Counsel costs in

28  the sum of $44,784.85.

### 3.    Incentive Award

Class Counsel request an incentive award of $20,000 to compensate Plaintiff for her efforts on behalf of the class. "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958-959 (citation omitted). In support of the incentive award requested, Class Counsel submitted declarations from Baker and Plaintiff. Baker Decl. ¶ 16, Dkt. 88-5.

In his declaration, Baker claims that a $20,000 incentive award is appropriate because Plaintiff played a pivotal role in the initiation of this lawsuit, was always available with information, contributed time and effort in gathering and analyzing facts, reviewed the complaint and discovery, and recruited witnesses and class members. Baker Decl. ¶ 16, Dkt. 88-5. Baker avers that Plaintiff carefully represented the interests of class members, including during the mediation session. Id. He also avers that Plaintiff assumed significant risks in becoming the named Plaintiff, including the risk of being liable for costs. Id. According to Baker, Plaintiff expended approximately 50-100 hours directly related to the representation of the class. Id. Plaintiff, for her part, claims that a $20,000 incentive award is appropriate because she reviewed all of the pleadings and discovery in this action, had numerous telephonic meetings and exchanged e-mails with her attorneys to help obtain documents from other consumers, reviewed the documents obtained by her attorneys and encouraged potential class members to participate in the settlement class, explained the nature of the claim and potential settlement to numerous consumers, and participated in all stages of litigation. Ko Decl. ¶¶ 11-12, Dkt. 88-6.

While Plaintiff invested time in this litigation, the Court finds that she is not entitled to a $20,000 incentive fee. A $20,000 incentive payment is quite high for this district, in which a $5,000 payment is presumptively reasonable. See Hopson v. Hanesbrands Inc., 2009 WL 928133, at *10 (N.D. Cal. 2009); see also In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive award of $5,000 to two plaintiff

representatives of 5,400 potential class members in $1.75 million settlement, but

constituting only 0.56% of the settlement). Here, Class Counsel requests an incentive

award of $20,000 for Plaintiff, which is approximately 1% percent of the gross settlement

amount, while the estimated payout to class members is approximately $35. Class Counsel

have failed to justify the discrepancy between Plaintiff's $20,000 award and the $35 that

each class member is expected to receive.[7] The Court finds that such an award is excessive

under the circumstances. However, given the time and effort Plaintiff expended on behalf

of the class, an award of $5,000 is not excessive. Even though Plaintiff will receive a lower

than requested award, she will still be compensated handsomely for her time; the $5,000

award results in either a $100 or $50 hourly rate for the 50-100 hours Plaintiff expended on

this case.

## III.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Plaintiff's motion for final approval of class action settlement is GRANTED.

2.      The terms of the Settlement Agreement are incorporated into this Order and
are APPROVED.

3.      All objections to the Settlement are OVERRULED.

4.      The parties and the Settlement Administrator shall perform their respective
obligations under the terms of the Settlement Agreement.

5.      Plaintiff's motion for attorneys' fees, costs, and incentive award to the
Plaintiff is GRANTED IN PART AND DENIED IN PART. Class Counsel is awarded
attorneys' fees in the amount of $537,500, plus costs in the sum of $44,784.85. Plaintiff is
awarded $5,000 as an incentive award.

---

[7] The Court notes that class members will receive more than $35 in light of the Court's determination that the 25% benchmark and a $5,000 incentive award is appropriate. After deducting $537,500 in attorneys' fees, $44,784.85 in costs, $5,000 for Plaintiff's incentive award, and $400,000 in notice and claims administration expenses, the 26,434 class members will be entitled to receive a payment of approximately $44.

6.      Pursuant to the terms of the Settlement Agreement, the instant action is dismissed with prejudice.

7.      The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: 9/10/12

SAUNDRA BROWN ARMSTRONG
United States District Judge